IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

NICOLE REX,

        Plaintiff,

v.                                CIVIL ACTION NO.   5:15-cv-01017

WEST VIRGINIA SCHOOL OF
OSTEOPATHIC MEDICINE, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *First Amended Complaint* (Document 7), *Defendant West Virginia School of Osteopathic Medicine's Motion to Dismiss* (Document 12), the *Memorandum of Law in Support of Defendant West Virginia School of Osteopathic Medicine's Motion to Dismiss* (Document 13), *Defendants Michael Adelman, Leslie Bicksler and Elaine Soper's Motion to Dismiss* (Document 16), the *Memorandum of Law in Support of Defendants Michael Adelman, Leslie Bicksler and Elaine Soper's Motion to Dismiss* (Document 17), the *Plaintiff's Memorandum in Opposition to Motions to Dismiss by Defendants West Virginia School of Osteopathic Medicine, Michael Adelman, Leslie Bicksler, Elaine Soper* (Document 22),[1] and *Defendants West Virginia School of Osteopathic Medicine, Michael Adelman, Leslie Bicksler and*

---

1  The Plaintiff filed a *Combined Response in Opposition to Motions to Dismiss* (Document 21) on May 15, 2015, the date a response was due. Her *Memorandum in Opposition* (Document 22) was filed the following Monday, May 18. The combined response document appears to be a rough draft of the memorandum in opposition.  Because the Defendants used the memorandum in opposition in their reply, the Court will also consider that document despite its untimeliness.   In addition, the Court notes that the Plaintiff's opposition exceeds the twenty-page limit.   The Plaintiff states that this was necessary because she combined her responses to multiple motions to dismiss.   Finding good cause, the Court has considered the full document, but notes that parties should seek leave to file a document exceeding the applicable page limits prior to doing so.

*Elaine Soper's Reply to Plaintiff's Memorandum in Opposition to Motions to Dismiss by Defendants West Virginia School of Osteopathic Medicine, Michael Adelman, Leslie Bicksler, and Elaine Soper* (Document 24).

For the reasons stated herein, the Court finds that the Defendants' motions should be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff Nicole Rex initiated this action with a *Complaint* (Document 1) filed on January 23, 2015.  Her first amended complaint was filed on February 23, 2015.  In the amended complaint, she named the following defendants: West Virginia School of Osteopathic Medicine (WVSOM), Michael Adelman, in his official and individual capacity, Leslie Bicksler, in her official and individual capacity, Elaine Soper, in her official and individual capacity, Jeffrey Shawver, in his official and individual capacity, and Tiffany Wright.   On June 8, 2015, she filed a *Stipulation of Voluntary Dismissal of Defendants Jeffrey Shawver and Tiffany Wright* (Document 27).

The Plaintiff was a student at WVSOM in 2012.  She alleges that a fellow student, D.M., drugged and raped her after she had been drinking at an off-campus party they both attended on August 31, 2012.[3]   The Plaintiff and her friends had difficulty ascertaining how to report her alleged assault to WVSOM.  "While WVSOM policy designated that the Associate Dean of Student Affairs or the Director of Human Resources handle sexual harassment complaints, WVSOM had no Associate Dean of Student Affairs at the time, and the Director of Human

---

2 For purposes of this motion to dismiss, all factual allegations contained in the amended complaint are accepted as true.
3 She also alleges that D.M. brought marijuana to the party, which he shared with others, though she did not smoke any.

Resources was responsible for school personnel, not students." (Compl. at ¶ 40.) On or about September 5, 2012, one of the Plaintiff's friends emailed John A. Shriefer, the Associate Dean for Pre-Clinical Education, responsible for first and second year students, to request a meeting. The Plaintiff met with Dean Shriefer on September 6, 2012, and reported the assault, as well as the symptoms that made her believe she had been drugged. (*Id.* at ¶ 42.) Dean Shriefer told her that he did not know how to proceed or who at WVSOM was responsible for handling complaints of sexual assault or harassment, but assured the Plaintiff that her complaint would be confidential and that she would be protected from retaliation. (*Id.* at ¶¶ 45, 46, 50.) Dean Shriefer drafted a formal complaint of sexual assault, and the Plaintiff signed it on September 12, 2012. (*Id.* at ¶ 68.)

The Plaintiff reported the assault to the police and went to the hospital on September 6, 2012, the same day she met with Dean Shriefer. The doctor found vaginal inflammation and tenderness, as well as vaginal bleeding. The Plaintiff sought a Personal Safety Order against D.M. from the Greenbrier County Court. The Court issued a Temporary Personal Safety Order banning D.M. from communicating with the Plaintiff and scheduled a personal safety hearing for September 19, 2012. (*Id.* at ¶¶ 65–67.)

The Plaintiff asserts that a fellow student told her that D.M. had asked the student to testify that he had not put anything in her drink. (*Id.* at ¶ 69.) She spoke with Dean Schriefer and WVSOM President Michael Adelman about that report. They told her that Dean Schriefer would support her during the investigation, including at the court hearing, and President Adelman told her that she did not need her own attorney. (*Id.* at ¶¶ 70–72.) However, prior to the hearing, WVSOM allegedly "directed Dean Shriefer to stop helping" the Plaintiff. (*Id.* at ¶ 98.) Dean

Schriefer attended the hearing, but refused to speak with her.  (*Id.* at ¶ 99.)  Dean Schriefer did

speak with D.M. and his counsel, and left with him at the end of the hearing.  (*Id.* at ¶ 100.)  The

Plaintiff requested that the hearing be continued so that she could retain counsel, which was

granted.  (*Id.* at ¶ 102.)

The court hearing was held on September 25, 2012.  D.M. testified under oath that "he

knew that [the Plaintiff] was drinking 'way too fast,'" but claimed that he was unable to engage in

sexual intercourse due to his own intoxication.  (*Id.* at ¶ 104.)  The magistrate found that D.M.

had sexually assaulted the Plaintiff and issued the maximum two-year order of protection, banning

D.M. from having any contact with the Plaintiff.  (*Id.* at ¶¶ 105-06.)  He also issued an order

barring D.M. from speaking to anyone at WVSOM about the Plaintiff.  (*Id.* at ¶ 107.)

Meanwhile, on September 18, 2012, WVSOM issued a no-contact order against the

Plaintiff, banning her from having any contact with D.M. and warning her of consequences if she

did not comply.  (*Id.* at ¶¶ 77–84.)  It was signed by Defendant Elaine Soper as the Title IX

Coordinator, which was the first time the Plaintiff was informed that WVSOM had a Title IX

Coordinator.  (*Id.* at ¶¶ 77–86.)  Defendants Bicksler and Soper further warned the Plaintiff that

she was prohibited "from communicating with any student, faculty member, or administrator

about her case" and would face serious consequences if she did so.  (*Id.* at ¶¶ 88, 95.)  Jeffrey

Shawver, an attorney for WVSOM, later told the Plaintiff that speaking about the assault to her

therapist would constitute a criminal offense.  (*Id.* at ¶ 113.)  The Plaintiff alleges that these

restrictions made it impossible for her to attend classes, seek accommodations from her professors,

receive support from friends, or even explain her absences and behavioral changes to her

professors.  (*Id.* at 98–97.)  The Plaintiff asserts that WVSOM did not require D.M. to abide by the same restrictions, although both received a no-contact order.  (*Id.* at ¶¶ 69–70, 123.)

The Plaintiff also alleges that WVSO failed to protect her privacy.  A staff member "disclosed to second year students and perhaps others that [the Plaintiff] had filed a complaint accusing [D.M.] of raping her."  (*Id.* at ¶ 109.)  Title IX Coordinators Leslie Bicksler and Ms. Soper, as well as WVSOM attorney Mr. Shawver, took no action when the Plaintiff reported the breach of her confidentiality.  Students, staff members, and faculty asked the Plaintiff about her alleged rape, commented about it on social media, and made the Plaintiff, as well as issues of sexual assault and Title IX, subjects of campus mockery and ridicule.  (*Id.* at ¶¶ 128–135.)

Shortly after the Plaintiff filed her formal complaint, WVSOM opened an investigation against her aunt, a WVSOM employee with whom the Plaintiff resided.  (*Id.* at ¶¶ 116–17.)  Mr. Shawver conducted the investigation.  The investigation receded after WVSOM "concluded its review of [the Plaintiff's] claims."  (*Id.* at ¶ 121.)

The Plaintiff alleges that WVSOM's investigation into the sexual assault was insufficient and biased.  She asserts that WVSOM lacked any policy or procedures when she initially reported her rape.  As a result, she believes WVSOM's response was flawed from the beginning. Although she reported that she suspected she had been drugged, the school did not suggest she be tested, and later ignored her request for a recommended testing facility.  (*Id.* at ¶ 124.)  WVSOM did not give the Plaintiff a timeline for the investigation, did not keep her informed as to its progress, and missed its own stated deadlines without issuing a report or status update.  Ms. Bicksler and Ms. Soper "required [the Plaintiff] to file her official statement over a month earlier than [D.M.], allowing him substantial time in which to fine tune his story, dissect her witness

5

statement, better prepare his case, and delay his statement until after the Court case [seeking a protective order before the magistrate] was complete."   (*Id.* at ¶ 123.)

WVSOM issued a Confidential Report of Investigation (the Report) on December 10, 2012, finding that D.M. had engaged in "unprofessional" behavior on the night in question.[4]   (*Id.* at ¶¶ 139–40.)   "However, the Report determined that [D.M.] did not know that [the Plaintiff] was incapacitated so sexual harassment had not been proved."   (*Id.* at ¶ 142.)   The Report did not reference the Plaintiff's belief that she had been drugged, and WVSOM declined to consider potentially incriminating statements made by D.M., under oath, during the court proceeding.   (*Id.* at ¶¶ 145–149.)   As a result of the "unprofessional conduct" finding, D.M. was ultimately required to "write a 5 page paper about why drugs are harmful and do 10 hours of community service," and was assured that his Dean's Letter of recommendation would not mention the incident as long as he "was not caught engaging in similar behavior in the future."   (*Id.* at ¶ 173.)

The Plaintiff appealed the findings of the Report.   WVSOM again failed to keep the Plaintiff informed as to the appeal's process, progress, or outcome.   (*Id.* at ¶ 164.)   The appeal was ultimately denied.   WVSOM declined to reopen the case after the Plaintiff "received the results of a drug test confirming that [she] was in fact given diazepam (Valium) – a commonly used rape drug – during the relevant time period."   (*Id.* at ¶ 168–69.)

In early 2013, as the appeal was in progress, D.M. twice approached the Plaintiff and her friends in a manner that she found threatening.   She reported his conduct to law enforcement, and the restraining order was modified to bar him from being within 250 feet of her.   (*Id.* at ¶¶ 159–60.)   WVSOM did not take any action against D.M.   (*Id.* at ¶ 161.)   Instead, the Plaintiff was

---

4 The Plaintiff alleges that "[t]he Report stated that [D.M.'s] conduct 'negatively impacted fellow students' and included 'consumption of an illegal drug which he brought to the party.'"   (Am. Compl. at ¶ 140.)

offered a personal escort to accompany her to and from classes, but the escort was often unavailable. (*Id.* at ¶¶ 162–63.)

The Plaintiff filed a complaint with the United States Department of Education's Office of Civil Rights (OCR) on March 12, 2013, alleging that WVSOM violated Title IX in its handling of her complaint.  (*Id.* at ¶ 175.)   She asserts that an OCR employee told her that WVSOM was not cooperative with the resulting investigation.  (*Id.* at ¶ 176.)   She further alleges that WVSOM began modifying its policies to conform with Title IX only after the OCR investigation began. (*Id.* at ¶ 177.)

After completion of the Report, WVSOM allegedly responded to the continuing harassment of the Plaintiff by pressuring her to leave campus.   President Adelman told her father "that WVSOM's 'first priority is to get [the Plaintiff] out of here for her safety, comfort, and well-being.'"   (*Id.* at ¶ 151.)   Dean Schriefer and President Adelman offered the Plaintiff assistance in leaving campus and in transferring to another medical school, though no tuition refund was offered.  (*Id.* at ¶¶ 152, 174.)   The Plaintiff took a leave of absence in March 2013, and withdrew from WVSOM in July 2013.  (*Id.* at ¶¶ 170–71.)   She transferred to another medical school, where she had to repeat her first year.   (*Id.* at ¶ 171.)

The Plaintiff asserts the following causes of action:[5]

(1)     Violation of Title IX against WVSOM – Hostile Educational Environment;
(2)     Violation of Title IX against WVSOM – Clearly Unreasonable Response;
(3)     Violation of Section 1983, First Amendment Free Speech Rights against Defendant Jeffrey Shawver (voluntarily dismissed);
(4)     Violation of Section 1983, Fourteenth Amendment Equal Protection Rights against Defendants Adelman, Bicksler, and Soper;
(5)     *Monell* Liability for Failure to Train and Supervised Personnel on the Proper Response to Sexual Assault, against WVSOM;

---

5  Though certain claims, as noted, are no longer pending, the Court will maintain the current numbering of the counts.

(6)    *Monell* Liability for Unconstitutional Custom and Practices against WVSOM;

(7)    *Monell* Liability for Unconstitutional Custom and Practices against WVSOM (duplicate of Count Six);

(8)    Invasion of Privacy against WVSOM and Defendant Wright (dismissed against Ms. Wright);

(9)    *Prima Facie* Negligence against WVSOM;

(10)   Breach of Contract against WVSOM;

(11)   Unauthorized Practice of Law against WVSOM and President Adelman;

(12)   Intentional Infliction of Emotional Distress (IIED) against WVSOM.

The Plaintiff seeks compensatory damages, punitive damages, injunctive relief, statutory interest, costs, and reasonable attorney fees.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.   *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."   *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

*A.  Title IX*

WVSOM moves to dismiss the Title IX claims.  It argues that the facts pled in the amended complaint demonstrate that it was not deliberately indifferent to the Plaintiff's claims of sexual harassment because it undertook an investigation and issued a no-contact order.   It further argues that not having a policy or procedure in place for handling Title IX claims is not actionable in itself.   The Plaintiff responds that WVSOM's response to her complaint of sexual assault as a whole, and its investigation in particular, were inadequate and plagued by bias.   She also argues that she sufficiently pled a claim for retaliation under Title IX.   WVSOM replies that the Plaintiff is simply attempting to second-guess the results of the investigation.   It also argues that she did not plead a claim for retaliation under Title IX.

First, the Court concludes that the current amended complaint does not contain a Title IX claim for retaliation.  The Plaintiff specifically identified the two Title IX counts as "hostile educational environment" and "clearly unreasonable response."   Although both counts contain allegations that she suffered retaliation, the Defendant was not on notice that those brief allegations formed a separate claim.  Because the Plaintiff has not pled a Title IX retaliation claim, the Court expresses no opinion with respect to whether the factual allegations would support such a claim.

Title IX provides that:  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."   20 U.S.C. § 1681.   A school receiving federal funds may be held liable for student-on-student harassment "where the

funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities."  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633, (1999).   "To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution."[6]  *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007).

The Plaintiff has alleged sufficient facts to state a claim for sexual harassment under Title IX.   She alleges that she was a student at WVSOM, an institution receiving federal funds.   She alleges that she was raped by a fellow student, and harassed by her attacker, other students, and WVSOM faculty and stuff as she pursued her claim.   She alleges that WVSOM had no procedures in place at the time of her attack, leaving her to search out support from unprepared WVSOM officials.   She alleges that WVSOM's investigation was flawed and biased in favor of her attacker, and that WVSOM deliberately deprived her of both internal and external forms of support.   Her allegations support an inference that WVSOM engaged in the investigation with the intention of minimizing the incident, protecting the school's reputation, and putting the incident behind the institution.   Finally, she alleges that WVSOM, after ignoring or even encouraging continued harassment, informed her that she could not be protected on campus and facilitated her withdrawal.   If those allegations are ultimately supported by the evidence, they could constitute deliberate indifference.   Accordingly, WVSOM's motion to dismiss Counts One and Two (considered jointly) must be denied.

---

6 This framework requires plaintiffs to demonstrate both a hostile environment and an unreasonable response (or deliberate indifference).   The amended complaint contains separate Title IX counts for "hostile educational environment" and "clearly unreasonable response."   The Court has considered those counts jointly.

*B. 42 U.S.C. § 1983*

The Defendants, in their separate motions to dismiss, argue that the claims brought pursuant to 42 U.S.C. § 1983 in Counts Four through Seven should be dismissed.  WVSOM asserts that it is not subject to claims under § 1983 because it is an arm of the state, not a person. President Adelman, Ms. Bicksler, and Ms. Soper likewise argue that they are not subject to suit under § 1983 in their official capacities because they are not "persons."   They further argue that the claims against them in their individual capacities fail because their actions did not violate the Plaintiff's right to personal security and bodily integrity and they did not treat the Plaintiff in a discriminatory manner.   Finally, they assert that they are entitled to qualified immunity because they were performing discretionary functions within wither official capacities in responding to the Plaintiff's complaint.

The Plaintiff, citing West Virginia case law, argues that neither WVSOM nor its officials are immune from liability.   She argues that Eleventh Amendment immunity is inapplicable because she requests injunctive relief.   She asserts that qualified immunity is not available because the Defendants violated her clearly established right to be free from sex discrimination in education.

Section 1983 provides, as relevant:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

12

42 U.S.C. § 1983.   States, state agencies, and state officials in their official capacities are not "persons" for purposes of § 1983,[7] although municipalities and municipal officials are considered "persons" subject to suit.   *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 690–91 (1978).   Section 1983 suits for sexual harassment follow the framework of Title VII claims.   Thus, the Plaintiff must allege that the Defendant(s) were state actors, she was harassed because of her sex, and "the harassment was sufficiently severe or pervasive to interfere unreasonably with her educational activities." *Jennings*, 482 F.3d at 701.

The doctrine of respondeat superior is not available for § 1983 claims, but defendants may be subject to supervisory liability.   *Baynard v. Malone,* 268 F.3d 228, 235 (4th Cir.2001).   To establish supervisory liability, a Plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); (reaffirmed in *Baynard*, 268 F.3d at 235).

Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties.   *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).   Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties."   *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation

---

7 However, state officials are subject to suit in their official capacities to the extent they are sued for injunctive relief. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 93, note 10 (1989).

marks omitted.)  The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff…."  *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted).  Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right.  *Pearson*, 555 U.S. at 231–32.  "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

The Fourth Circuit has not addressed whether public colleges and universities are "persons" under § 1983.  However, most circuits to consider the question have concluded that public colleges and universities (or their Boards of Trustees) are not subject to suit under § 1983. *See, e.g.*, *Gaby v. Bd. of Trustees of Cmty. Technical Colleges*, 348 F.3d 62, 63 (2d Cir. 2003); *McLaughlin v. Bd. of Trustees of State Colleges of Colorado*, 215 F.3d 1168, 1172 (10th Cir. 2000); *Googerdy v. N. Carolina Agr. & Technical State Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005); *but see Gay Student Servs. v. Texas A & M Univ.*, 612 F.2d 160, 163-64 (5th Cir. 1980) *abrogated by Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

This Court, likewise, concludes that a public university is an arm of the state not subject to suit under § 1983.  Although *Monell* held that municipalities were subject to § 1983 liability where the municipality's custom or policy caused the constitutional harm, that holding has not been extended to other entities that are arms of the state.   The Plaintiff, therefore, necessarily has

not stated a plausible claim for relief against WVSOM under § 1983 in Counts Five, Six, or Seven, and those counts must be dismissed.

Count Four asserts an equal protection claim against Defendants Adelman, Bicksler, and Soper in their official and individual capacities.   Although official capacity suits are generally treated as suits against the entity, plaintiffs may seek injunctive relief through § 1983 actions against officials in their official capacity.   The Plaintiff seeks injunctive relief, including changes in WVSOM policies related to sexual harassment and drug testing for victims of sexual violence.[8] Therefore, dismissal of Count Four against the Defendants in their official capacities is not warranted based on their status as officials, although monetary damages are not available against the Defendants in their official capacities.

Next, the Court finds that the Plaintiff has sufficiently stated a plausible claim for violation of her equal protection rights under the Fourteenth Amendment against President Adelman, Ms. Bicksler, and Ms. Soper.   Of course, these Defendants cannot be held liable for D.M.'s alleged rape.   However, they may be subject to liability for their own actions—and inactions—following the Plaintiff's complaint.   For example, Ms. Bicksler and Ms. Soper allegedly imposed a No Contact Order against the Plaintiff, prohibiting her from speaking with anyone about her rape. When a WVSOM employee disclosed the Plaintiff's allegations to second-year medical students, Ms. Bicksler and Ms. Soper allegedly did nothing.   The Plaintiff also alleges that Ms. Bicksler and Ms. Soper gave D.M. extra time to file his statement and prepare his case.

---

8 In their reply, the Defendants argue that the Plaintiff did not properly plead a claim for injunctive relief because she failed to include any allegations with respect to the likelihood of success at trial, risk of harm in the absence of preliminary relief, balance of equities, or public interest.   Those factors relate to a preliminary injunction, which the Plaintiff does not seek.

The Plaintiff asserts that President Adelman was aware of the Plaintiff's complaint, and D.M.'s efforts to gather evidence in his favor, at an early stage.   He allegedly assured her that Dean Shriefer would support her and that she did not need an attorney at a court hearing, shortly before the school and administration withdrew all supportive resources.   The Plaintiff also alleges that President Adelman was active in pressuring her to withdraw from WVSOM.

In addition to their own alleged actions in putting the Plaintiff at a disadvantage in the complaint process compared to her alleged attacker, all three Defendants may be subject to supervisory liability.   Faculty and staff at WVSOM, as well as students, reportedly subjected the Plaintiff to harassment and ridicule related to the rape and her complaint.   Each of these Defendants was allegedly aware of at least some of the instances of harassment, and they ignored the harassment as it happened.   Although WVSOM did eventually hold a Title IX training, the response as a whole, as described by the Plaintiff, allegedly did nothing to make clear that such harassment was not acceptable behavior.   Ultimately, rather than taking action to stop the campus community from continuing to harass the Plaintiff and mock the subject of sexual harassment, the Defendants allegedly pressured her to withdraw.

Finally, the right to be free from sexual discrimination and harassment at an educational institution is clearly established.   *See, e.g.*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).   It is also clearly established that responding to complaints of sexual harassment with deliberate indifference violates that right.   *Jennings*, 482 F.3d at 701.   The Plaintiff has alleged that the Defendants deliberately imposed additional burdens on her and deliberately instituted a biased investigation of her complaint.   Therefore, the Court finds that the Defendants are not

16

entitled to qualified immunity at this stage.   Accordingly, the Defendants' motion to dismiss Count Four must be denied.

### C.  Common Law Claims

WVSOM moves for dismissal of Counts Eight through Twelve on the basis of immunity because the Plaintiff failed to limit her recovery to the amount of its insurance policy.  Both WVSOM and President Adelman also assert that the Plaintiff's claim for unauthorized practice of law in Count Eleven must be dismissed because she was not damaged by President Adelman's advice that she did not need an attorney at the Magistrate hearing.   WVSOM argues that the Count Ten claim for breach of contract must be dismissed because it is based on the Student Handbook, which is not a contract.

In response, the Plaintiff cites case law from the District Court for the Northern District of West Virginia permitting cases to go forward without expressly pleading that recovery is limited to insurance coverage because "federal courts are not governed by state court pleading rules." (Resp. at 27.)   She further argues that she was damaged by President Adelman's unauthorized practice of law because she suffered emotional distress as a result of WVSOM's withdrawal of support at the hearing, which was continued to permit her to obtain counsel.

The West Virginia Constitution provides that the state is immune from lawsuits.  W. Va. Const. art. VI, § 35.   That immunity is not applicable when the relief sought is limited to the amount recoverable from the State's liability insurance.  *See, e.g.*, Syl. Pt. 1, *Parkulo v. W. Virginia Bd. of Prob. & Parole*, 483 S.E.2d 507, 509 (W. Va. 1996).   *Parkulo* established a rule requiring plaintiffs to expressly allege "that the recovery sought is limited to the applicable insurance coverage" in the complaint.  *Id.*, Syl. Pt. 3.   Some federal courts within West Virginia

have applied that rule.  *See, e.g.*, *B.E. v. Mount Hope High Sch.*, No. 2:11-CV-00679, 2012 WL 3580091, at *4 (S.D.W. Va. Aug. 17, 2012) (Goodwin, J.); *Smith v. W. Virginia Univ. Bd. of Governors*, No. 2:11-CV-00430, 2012 WL 1111440, at *6 (S.D.W. Va. Mar. 30, 2012) (Johnston, J.).   Others, however, have concluded that the pleading requirement is a procedural rule not applicable in federal court.   *See, e.g.*, *Hutchinson v. W. Virginia State Police*, 731 F. Supp. 2d 521, 534 (S.D.W. Va. 2010) (Chambers, J.) *aff'd sub nom. Hutchinson v. Lemmon*, 436 F. App'x 210 (4th Cir. 2011); *Ambrose v. Sheeley*, No. 3:12-CV-79, 2013 WL 1890729, at *4 (N.D.W. Va. May 6, 2013) (Groh, J.)

The Federal Rules of Civil Procedure set forth the pleading requirements for documents filed in federal court.   WVSOM does not assert that the Federal Rules of Civil Procedure require a statement that the relief sought is limited to the liability insurance coverage.[9]   The Court finds that the state requirement that a complaint contain an allegation limiting recovery on claims against the state to the applicable insurance coverage is procedural, rather than substantive.   It is, therefore, not binding on federal courts.   The substantive aspect of the rule—that damages cannot exceed WVSOM's applicable insurance coverage—applies.   However, the Court finds that the motion to dismiss Counts Eight through Twelve on the basis of sovereign immunity should be denied.

WVSOM moves to dismiss Count Ten on alternative grounds.   The Court finds that the Plaintiff's claim for breach of contract must be dismissed because it does not allege facts to establish a binding contract.   The Plaintiff relies on WVSOM's sexual harassment policy, contained in the Student Handbook.   WVSOM attached a "Handbook Policy Statement" that

---

9 In general, when a complaint seeks relief that is unavailable, that form of relief will be stricken without impacting the underlying claim.   *See, e.g.*, *Walden v. Starcon Int'l, Inc.*, No. 2:14-CV-12913, 2014 WL 3696658, at *3 (S.D.W. Va. July 23, 2014) (Goodwin, J.) (dismissing claim for punitive damages).   Defendants can thus ensure that damages remain within legal limits without courts dismissing otherwise valid claims.

expressly states that the Student Handbook is not a contract.   (Handbook Policy Statement, att'd to WVSOM's Mot. as Ex. A) (Document 12-1.)   Accordingly, Count Ten must be dismissed.

Count Eleven alleges that WVSOM and President Adelman engaged in the unauthorized practice of law when President Adelman told the Plaintiff that (a) he was an attorney and (b) she did not need counsel at the Magistrate's hearing for a protection order because Dean Shriefer would support her.   In West Virginia, "[a] party who has suffered…a legally cognizable injury…as a proximate result of the unlawful and unauthorized practice of law by another has standing to assert a claim…seeking relief."   Syl. Pt. 1, *McMahon v. Advanced Title Servs. Co. of W. Virginia*, 607 S.E.2d 519, 520 (W. Va. 2004).   The Defendants assert that, because the Plaintiff was ultimately able to have the hearing continued, obtain counsel, and receive the relief she sought, she suffered no damages.

The Court disagrees.   Relying on President Adelman's assurances, she arrived at the September 19, 2012 hearing without counsel, only to find that her alleged attacker was present with counsel, and Dean Schriefer was no longer supporting her.   On her request, the court continued the hearing until September 25, 2012, when she appeared with counsel and obtained a two-year order of protection.   The Plaintiff has alleged that she was damaged by being without the support of counsel at the September 19 hearing and by having to wait an additional week for resolution of the process of seeking an order of protection.   Thus, the motion to dismiss as to Count Eleven should be denied.

## CONCLUSION

WHEREFORE, following careful consideration and for the reasons stated herein, the Court **ORDERS** that *Defendant West Virginia School of Osteopathic Medicine's Motion to*

19

*Dismiss* (Document 12) be **GRANTED IN PART AND DENIED IN PART**.   Specifically, the *Motion* (Document 12) is **GRANTED** as to Counts Five, Six, Seven, and Ten, and **DENIED** as to Counts One, Two, Eight, Nine, Eleven, and Twelve.

The Court further **ORDERS** that *Defendants Michael Adelman, Leslie Bicksler and Elaine Soper's Motion to Dismiss* (Document 16) be **DENIED**, except that the motion to dismiss is **GRANTED** as to Count Four for the Defendants in their official capacities to the extent the Plaintiff seeks non-injunctive relief.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER:       August 11, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

20