James R. Marsh (*pro hac vice pending*)
Jennifer Freeman (*pro hac vice pending)*
The Marsh Law Firm PLLC
P.O. Box 4668 #65135
New York, NY 10163-4668
Telephone | Fax: 212-372-3030
jamesmarsh@marshlaw.us
jenniferfreeman@marshlaw.us

Rachel Hanna (WV Bar # 9767)
Sponsoring Attorney
Law Office of Rachel Hanna
P.O. Box 871
117 East Washington Street
Lewisburg, WV 24901-0871
Telephone: 304-792-4529
rachelhanna@rachelhanna.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WESTVIRGINIA**

---------------------------------------------------------X

| | |
|---|---|
| ) | Civil Action No. 5:15-1017 |
| ) | |
| Nicole Rex, ) | |
| Plaintiff, ) | **SECOND AMENDED** |
| ) | **COMPLAINT** |
| v. ) | |
| ) | (Filed Electronically) |
| West Virginia School of ) | |
| Osteopathic Medicine, ) | |
| Michael Adelman in ) | |
| his official and individual capacity, ) | |
| Leslie Bicksler in her official ) | |
| and individual capacity, ) | |
| Elaine Soper in her official and ) | |
| individual capacity, ) | |
| Jeffrey Shawver in his official ) | |
| and individual capacity, and ) | |
| Tiffany Wright, ) | |
| Defendants. ) | |
| ) | |

---------------------------------------------------------X

Plaintiff Nicole Rex ("Nicole"), by and through her attorneys of record Marsh Law Firm PLLC and the Law Office of Rachel Hanna, alleges for her complaint this Second Amended Complaint—which relates back to the filing of the original and First Amended complaint—as follows:

## PRELIMINARY STATEMENT

1.      This is an action by Nicole against West Virginia School of Osteopathic Medicine ("WVSOM" or the "School") and other defendants for sexual harassment in connection with WVSOM's gross mishandling of her complaint of sexual assault by another student. WVSOM discriminated against her, on the basis of sex, demonstrating its deliberate indifference, by failing to adopt, publish or implement grievance policies and procedures that provided Nicole with the prompt and equitable resolution of her complaint of sexual harassment, including sexual assault.

2.      Rather than accord Nicole an adequate, reliable and impartial procedure, WVSOM punished the victim. WVSOM failed to collect critical evidence that she had been drugged, failing to comply with even basic requirements of Title IX. WVSOM failed to identify or provide contact information for the Title IX Coordinator, improperly and without basis imposed a No Contact Order against her, improperly and without basis prohibited her from discussing her case with anyone thereby cutting her off from all emotional support, breached her confidentiality, permitted if not encouraged ridicule and mockery of her, ignored sworn statements by the perpetrator in a court of law, and failed to protect her from contact with her rapist. Perhaps most egregiously, WVSOM affirmatively punished the victim. The School advised Nicole that that it was unable to keep Nicole safe there and that in order to "protect" her, Nicole had to leave WVSOM. Rather than taking steps to prevent recurrence of sex discrimination or harassment and to correct discriminatory effects on Nicole, WVSOM

effectivelykicked Nicole out of school. In so doing, WVSOM engaged in deliberate indifference to Title IX requirements, pervasive failure to adopt compliant policies, repeated failure to provide prompt, equitable and effective redress, retaliation, and deprivation of her opportunity to participate in or benefit from educational opportunities based on sex.

3.      Nicole seeks redress under the color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to plaintiff by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), the United States Constitution pursuant to 42 U.S.C. § 1983, and the laws and statutes of the State of West Virginia.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district court's jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

5.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## PARTIES

7.     Plaintiff Nicole resides in the State of Kentucky.

8.     At the time of events complained of herein, Plaintiff was a first year student attending WVSOM.

9.     Defendant WVSOM is a public educational institution located in Lewisburg, West Virginia.

10.    Defendant Michael Adelman is President ("President Adelman") of WVSOM and resides in Lewisburg, West Virginia.

11.    Defendant Leslie Bicksler ("Bicksler") is the Associate Vice President for Human Resources at WVSOM and Title IX Coordinator and resides in Lewisburg, West Virginia.

12.    Defendant Elaine Soper ("Soper") is the Associate Dean for Assessment and Educational Development at WVSOM and Title IX Coordinator and resides in Lewisburg, West Virginia.

13.    Defendant Jeffrey Shawver ("Shawver") is WVSOM's General Counsel and resides in Lewisburg, West Virginia.

14.    Pursuant to Fed. R. Civ. Pro. 15(a)(1), Plaintiff's First Amended Complaint should be deemed filed as of the date of the filing of the original complaint.

## SUMMARY OF THE FACTS

### Deficient Procedures and Policies in Effect at the Time Nicole was Sexually Assaulted

15.    At all relevant times, Title IX required all federally funded schools to have in place policies and procedures compliant with Title IX. However, at the time of the assault, WVSOM lacked such policies and procedures.

16.     WVSOM failed to identify the Title IX Coordinators and their contact information in their policy or even advise that a Title IX Coordinator existed.

17.     It is not clear whether WVSOM had a trained Title IX Coordinator in place.

18.     WVSOM had a wholly inadequate and, in effect, no policy or procedure to minimize the burden on a Title IX complainant; indeed, WVSOM policy and procedure imposed significant burden on a Title IX complainant.

19.     WVSOM's policies and procedures offered few or no procedures to ensure timely, effective, reliable and impartial investigation of complaints.

20.     WVSOM's policies and procedures failed to ensure the complainant's safety and that interim measures would be taken to protect her.

21.     After the subject assault, WVSOM revised its sexual harassment policy to address, among other things, assault care, filing a complaint, the investigative process, criminal conduct, interim measures, treatment and counseling, and additional information. http://www.wvsom.edu/AboutWVSOM/t9/title9-home.

22.     Shortly before the sexual assault of Nicole, WVSOM informed students that the campus was "crime free."

23.     WVSOM failed to take steps to maintain Nicole's participation as a WVSOM student. Indeed, WVSOM ultimately advised if not effectively directed her to leave.

**The Sexual Assault by Fellow WVSOM Student**

24.     On August 31, 2012, Nicole attended a party at off campus apartments near WVSOM.

25.     Starting at approximately 9 p.m., McGuinness, who had met Nicole for the first time that evening, offered Nicole several shots of Jagermeister from a bottle he had brought to

the party. He later offered her the bottle to hold. Nicole accepted, believing that it would be safer to share a bottled drink rather than drink from party punch bowls.

26.     In addition to alcohol, McGuinness brought marijuana to the party which he smoked and provided to other students (she did not).

27.     Nicole does not remember what happened after approximately midnight; she blacked out for approximately 4.5 hours.

28.     When she woke up, McGuiness was lying on top of her forcefully penetrating her vagina with his penis.

29.     At that point, Nicole did not know where she was or who he was. She felt different than she had ever felt, disoriented, groggy and unable to recall the earlier events of the night, as if she had been drugged.

30.     Nicole exhibited many drug-related symptoms and believes that she was in fact drugged.

31.     Tests subsequently confirmed that at the time of the abuse, Nicole was under the influence of a "date rape drug."

32.     When McGuiness stopped penetrating her, he pulled her to the edge of the bed, forced her to "suck his balls," and ejaculated on her neck and chest. McGuinness rushed her out of the apartment where he had assaulted her – which was not his own but conveniently adjacent to the party where Nicole had been drugged – and drove her to his apartment. Her prescription glasses, shoes and other items were missing. Scared of what he might do, still unsure where she was, and continuing to be under the influence of whatever substance he had given her, Nicole felt it unwise to attempt to escape; when they got to McGuinness' apartment she fell back to sleep.

33.     When she woke up, Nicole had pain in her vulva. McGuinness started smoking "orange kush" marijuana and was vague about what had happened the night before. Instead, McGuiness held Nicole down and unzipped her pants. McGuiness attempted to have sex with Nicole but Nicole resisted by stating that she was sore. McGuiness responded by stating "those things are meant to take a beating." McGuiness then pushed her head to his genital region and told her to "come on" and "do something." Unsatisfied, he then penetrated her vagina with his penis. McGuiness then pulled Nicole to the edge of the bed and forced his penis into her mouth.

34.     Nicole was frightened.

35.     When McGuinness was finished, Nicole, still not knowing exactly where she was and concerned as to what McGuinness might do to her, as calmly as possible, asked him to drive her to the last place she remembered where they were together before she blacked out – where she thought her keys and car would be. She was not sure where her glasses were. He deposited her there and left.

36.     She later learned that she had been at the apartment of Chad Wood, a WVSOM student and the son of WVSOM Assistant Dean Ralph Wood.

37.   When Nicole arrived home she realized that she was bleeding vaginally. She later realized that she had a bruise on her arm in the shape of a handprint, as if she had been tugged or dragged.

38.     Nicole broke down sobbing.

39.     Nicole continued to feel groggy and otherwise drugged for several days.

**Nicole's Report of the Rape and WVSOM's Admission as to McGuinness' Aggressive Reputation and Conduct**

40.     Contrary to Title IX requirements, at that time, WVSOM had no administrator charged with handling student on student sexual assault. While WVSOM policy designated that

the Associate Dean of Student Affairs or the Director of Human Resources handle sexual

harassment complaints, WVSOM had no Associate Dean of Student Affairs at the time, and the

Director of Human Resources was responsible for school personnel, not students.

41.   Not knowing who to turn to at WVSOM, on or about September 5, 2012, one of

Nicole's friends emailed John A. Schriefer, Associate Dean for Pre-Clinical Education ("Dean

Schriefer"), the Dean of first and second year students. She requested a meeting for Nicole the

next day.

42.     On September 6, 2012, Nicole, accompanied by two friends, reported the assault

to Dean Schriefer. The only other "official" present was his secretary, Deborah Harvey

("Harvey").

43.     Nicole explained what happened to her that night, crying inconsolably.

44.     Nicole told Dean Schriefer and Harvey that she had never felt like that before,

that she had no memory of events between approximately midnight and 4:30 a.m., and that she

didn't know why she had blacked out for several hours.

45.     Dean Schriefer admitted that he had not addressed such matters before, and he

didn't know to whom to turn or how to proceed.

46.     Dean Schriefer advised Nicole that all efforts would be made to maintain the

confidentiality of her complaint and her privacy. However, as it turned out, contrary to Title IX

requirements, this advice was incorrect; WVSOM took few if any steps to protect Nicole's

privacy and her identity, did little or nothing to stem widespread dissemination of her private

information, and in fact condoned disclosure by a WVSOM employee of her complaint.

47.     Dean Schriefer advised Nicole to file a formal complaint with the school and

report the matter to the police.

48.     Nicole told Dean Schriefer that she believed that there would be negative repercussions if she pursued a sexual assault complaint against McGuinness.

49.     One of the students with Nicole said that McGuiness had an "aggressive reputation" at the School. Harvey agreed and said that McGuiness had acted aggressively towards a staff member during an orientation bowling event a few weeks previously.

50.     Dean Schriefer assured her that she would be protected and that retaliation would not result.

## WVSOM's Failure to Collect Critical Evidence of Nicole Being Drugged and Its Other Failures

51.     WVSOM's handling of its initial meeting with Nicole and its subsequent processes were woefully inadequate.

52.     Neither Dean Schriefer nor Harvey nor any other WVSOM representative advised Nicole to undergo a drug test or made any efforts to help her obtain one, even though WVSOM readily drug tested all first and second year students.

53.     This failure to test or encourage Nicole to be tested substantially impaired Nicole's ability to isolate any drugs McGuinness may have surreptitiously slipped into the drinks he plied her with.

54.     This failure was unacceptable and particularly damaging since, among other things, drug testing close in time to a sexual assault is a well-established and important best practice in rape cases.

55.     Neither Dean Schriefer nor Harvey nor any other WVSOM representative advised Nicole to be tested for sexually transmitted diseases.

56. Contrary to Title IX requirements, neither Dean Schriefer nor Harvey nor anyone else at WVSOM advised Nicole regarding her rights as a victim of sexual assault or the school's processes for bringing a complaint. No pamphlet or other written materials were provided to her.

57. Contrary to Title IX requirements, neither Dean Schriefer nor Harvey advised Nicole about available resources and options for her, such as victim advocacy, academic support, disability services, health and mental health services and legal assistance.

58. Contrary to Title IX requirements, WVSOM had few such resources.

59. Contrary to Title IX requirements, WVSOM lacked a policy as to the time frame in which to investigate a sexual harassment complaint.

60. Contrary to Title IX requirements, neither Dean Schriefer nor Harvey nor any other WVSOM representative advised Nicole at or near that time, and for many weeks, about the likely time frame in which her complaint would be adjudicated.

**Nicole's Report to Police and Emergency Room Visit, and the Court's Issuance of a Temporary Personal Safety Order Against McGuinness**

61. That same day, Nicole, accompanied by her two friends, also reported the assault to the police. She told them, as she had Dean Schriefer, that she had never felt that way before and that she didn't understand why should would have blacked out and had no memory of the earlier events of the encounter with McGuinness. She said that how she felt was not normal and not right.

62. Nicole was advised to go to the hospital and obtain an order of protection against McGuinness from the courts.

63. At the hospital, the doctor examined Nicole and noted vaginal inflammation and tenderness. Although the doctor advised Nicole that her vaginal bleeding may simply have been her normal menstrual cycle and that the vaginal trauma from the rape may have tricked her body

into starting early, this turned out to be incorrect. Nicole continued to bleed for a week and thereafter also shed her uterine lining, experiencing her normal menstrual cycle, such that she bled or some two weeks.

64.     Nicole then filed a petition with the Greenbrier County Court seeking a Personal Safety Order against McGuinness.

65.     The Court promptly issued a Temporary Personal Safety Order against McGuinness, banning him from communicating with Nicole.

66.     The Court did not issue any kind of ban against Nicole communicating with McGuinness (or anyone else).

67.     A personal safety hearing was scheduled for September 19, 2012.

68.     On September 12, 2012, Dean Schriefer advised Nicole that he had drafted a formal complaint of sexual assault for Nicole to sign. Nicole quickly reviewed the complaint and signed it.

### WVSOM's Ignoring of McGuinness' Concerns about Being Accused of Drugging Nicole, Improper and Incorrect "Legal" Advice, and Abandonment of Nicole

69.     Shortly before the Court's Personal Safety Order hearing, one of the students who Nicole had asked to attend the hearing told Nicole that McGuinness had contacted the student – McGuinness asked the student to testify to the Court that McGuinness had not put anything in Nicole's drink at the party to drug her. Nicole was shocked, concerned that McGuinness was apparently accumulating evidence, and disturbed that he was specifically trying to concoct proof that he had not drugged her.

70.     Nicole discussed the matter with Dean Schriefer and asked for help.

71.     Dean Schriefer offered to go to the hearing with Nicole.

72.     Nicole also spoke with WVSOM President Michael Adelman ("President Adelman") who told Nicole that Dean Schriefer had been assigned to support her during the investigation, who would help her at the hearing and beyond.

73.     President Adelman identified himself to Nicole as an attorney, knowledgeable about sexual assault complaints and hearings.

74.     President Adelman told Nicole that she did not need her own attorney.

75.     President Adelman said that McGuiness was attempting to intimidate Nicole and that Dean Schriefer would assist her.

76.     Based on President Adelman's legal advice and assurances, Nicole believed that she didn't need her own counsel and that Dean Schriefer would protect her interests.

**WVSOM's Improper and Disturbing Issuance of a No Contact Order Against Nicole, Punishing Nicole for Making a Complaint of Sexual Assault and Cutting her off from Virtually All Emotional Support**

77.     On the morning of September 18, 2012, Dean Schriefer texted Nicole advising her that he had a No Contact Order for her to pick up at his office. He prefaced his text, "This may seem silly…."

78.     Nicole assumed that Dean Schriefer was referring to a No Contact Order prohibiting McGuinness from contacting her, which presumably would be unnecessary and perhaps "silly" in light of the Court's pre-existing Personal Safety Order against him.

79.     To her surprise and dismay, WVSOM had issued a No Contact Order not only against McGuinness but also against Nicole.

80.     According to the No Contact Order against her, WVSOM would conduct an investigation into Nicole's complaint. The No Contact Order did not specify the nature or timing of the investigation or when it would be completed.

81.     The No Contact Order banned Nicole from contacting McGuinness in any

fashion:

> You [Nicole] are prohibited from making any contact with Daniel J. McGuinness;
> you cannot contact him personally, stalk, call, text message, message on Facebook,
> email or mail via the Postal Service. You cannot have a third party have contact with
> him in any of the above manners.

82.     According to the No Contact Order, "Title IX regulations require that until such time

as the outcome of the investigation is determined," the broad No Contact Order had to be

imposed and remain in place against her.

83.     Nicole is not aware of any Title IX regulation mandating a No Contact Order to

be issued against the victim, and WVSOM identified none. To the contrary, Title IX requires that,

when taking steps to separate the complainant and the alleged perpetrator, a school should

minimize the burden on the complainant; WVSOM did just the opposite of what Title IX

required.

84.     The No Contact Order specifically warned Nicole that she would be punished if

she violated the Order – "Violation of any of the above prohibitions will result in further

charges."

85.     Neither Dean Schriefer nor any other WVSOM representative explained to Nicole

how or why it was in any way proper to issue her an order prohibiting her from contacting

McGuinness and threatening her with further charges if she did not comply.

86.     Even though WVSOM had said nothing to Nicole about the existence of a Title

IX Coordinator, the No Contact Order was signed by Soper as "Title IX Coordinator."

**WVSOM's Expansion of Prohibitions Against Nicole, and Their Devastating Effect on Her**

87.     WVSOM then expanded the prohibitions against Nicole.

88.     According to Bicksler and Soper, Nicole was prohibited from not only communicating with McGuinness, but also from communicating with any student, faculty member, or administrator about her case. Bicksler and Soper specifically warned Nicole that she would face serious consequences if she did so.

89.     The effect of these restrictions were devastating to Nicole. Nicole had difficulty attending class since WVSOM had only two classrooms across the hall from each other – in order for Nicole to attend her classrooms it was virtually impossible for her to avoid seeing McGuinness, and there was virtually no way to ensure that she would have no contact with him.

90.     In so doing, in violation of Title IX, WVSOM not only failed to minimize the burden on Nicole, WVSOM made it worse, all the while allowing McGuinness to roam the campus virtually unrestricted.

91.     Because of the administration's imposed "gag order", Nicole was also unable to explain her upset and avoidant behavior to anyone on campus, including her professors.

92.     Title Coordinators Soper and Bicksler further directed Nicole to talk to them only about her complaint.

93.     Title Coordinators Soper and Bicksler specifically directed Nicole not to communicate with Dean Schriefer about anything other than academics.

94.     By prohibiting Nicole from communicating with Dean Schriefer, WVSOM cut off Nicole's virtually only remaining means of support.

95.     Nicole was warned that if she violated these restrictions she would violate WVSOM's Honor Code and Student Professionalism Policy. Such violations could result in her expulsion.

96.     In issuing and expanding the No Contact Order against Nicole, WVSOM effectively punished Nicole for filing a complaint of sexual assault, exactly the opposite of what Title IX requires.

97.     Nicole was unable to maintain or build a support system or speak with anyone about the rape, its aftermath, or her concerns or feelings about any of it – she felt alone, isolated and abandoned.

**WVSOM's Direction to Dean Schriefer to Stop Assisting Nicole**

98.     WVSOM directed Dean Schriefer to stop helping Nicole.

99.     Thus, at the Court's September 19, 2012 hearing, far from assisting Nicole, Dean Schriefer refused to even speak with her.

100.    Dean Schriefer spoke with McGuiness and his counsel, and left with him at the end of the hearing.

101.    Nicole felt deserted, unsupported by WVSOM and without counsel.

102.    Nicole asked for the hearing to be held over to allow her to retain an attorney, which was granted.

**Judicial Personal Safety Order Prohibiting McGuinness from Contacting Nicole**

103.    At the continued Court hearing on September 25, Nicole and McGuiness testified under oath.

104.    McGuinness testified, among other things, that he knew that Nicole was drinking "way too fast." He testified that he didn't remember kissing or dancing with Nicole prior to the assault. He claimed that he had a "whiskey dick", suggesting that he failed to actually rape Nicole because he was having difficulty having sexual intercourse. Although he admitted to

drinking at the party, he said nothing to the Magistrate about bringing marijuana to the party, smoking it at the party with others, and smoking more later in front of Nicole.

105.     Magistrate Campbell determined that McGuiness had sexually assaulted Nicole, that Nicole did not consent, and that she was incapable of consenting to sexual contact due to her substantial incapacitation. The Court found McGuinness' conduct "shocking."

106.     The Court issued a two-year order of protection, the maximum sentence under applicable law, banning McGuinness from all contact with Nicole. According to the Order, "You are not to confront the Petitioner in any way."

107.     The Court also issued a gag order against McGuinness, prohibiting him from speaking to anyone at WVSOM about Nicole. According to the Court's Order,

> You [McGuinness] are not to speak about the petitioner [Nicole] in any form – to any persons at school (on campus).

108.     The Court did not restrict Nicole from confronting McGuinness or from talking with anyone about McGuinness or anything else; no gag order was issued against her.

**WVSOM's Refusal to Take Action against a Staff Member Who Had Breached Nicole's Confidentiality, Instead Threatening Nicole if She Spoke Out**

109.     Nicole soon learned that WVSOM Staff Member Wright disclosed to second year students and perhaps others that Nicole had filed a complaint accusing McGuinness of raping her. Wright was romantically involved with McGuinness at the time.

110.     On or about October 5, 2012, Nicole attempted to report to WVSOM officials Wright's improper disclosures of her sexual assault complaint and her identity. She was met with disregard or hostility.

111.     When Nicole sought to advise Title IX Coordinators Bicksler and Soper, they were nonresponsive, taking no action.

16

112.    When Nicole sought to advise WVSOM attorney, Jeffrey M. Shawver ("Shawver"), he threatened her with criminal charges if she spoke out.

113.    Attorney Shawver specifically directed Nicole not to speak with her therapist about the assault, indicating that to do so would constitute a criminal offense.

114.    Nicole felt devalued, cast aside and powerless.

115.    Although Nicole's attorney eventually was able to repudiate these gross misrepresentations, the damage was done. Nicole shut down.

### The Witch Hunt Against Nicole's Aunt

116.    WVSOM took steps not only to undermine Nicole, but also her aunt, with whom Nicole resided.

117.    Shortly after Nicole filed her formal complaint against McGuiness, WVSOM Assistant Dean Ralph Wood, opened an investigation with the Board of Governors against Nicole's aunt, Stephanie Schuler ("Schuler").

118.    Dean Wood was the father of Chad Wood, McGuinness' friend and the tenant of the apartment where McGuinness sexually assaulted Nicole.

119.    Attorney Shawver personally conducted the investigation.

120.    Attorney Shawver questioned campus personnel and others about Schuler's performance and character. He also questioned her "relationship" with President Adelman.

121.    Significantly, after WVSOM concluded its review of Nicole's claims, WVSOM's "investigation" of her aunt receded.

### WVSOM's Bias Against Nicole in the Investigation, Failure to Adopt Interim Measures, and Failure to Keep Nicole Informed

122.    Contrary to Title IX requirements, WVSOM's investigation was biased against Nicole and in favor of her attacker.

123.     Contrary to Title IX's requirement that the complainant and the alleged perpetrator be afforded similar and timely access to any information to be used at a hearing, Title IX Coordinators Bicksler and Soper required Nicole to file her official statement over a month earlier than McGuinness, allowing him substantial time in which to fine tune his story, dissect her witness statements, better prepare his case, and delay his statement until after the Court case was complete.

124.     Nicole attempted to obtain a proper drug test to help determine whether she had been under the influence of a rape drug. WVSOM ignored her request for a recommended testing facility or clinic.

125.     On October 26, 2012, WVSOM informed Nicole that they would issue a decision within two weeks.

126.   When that deadline passed, Nicole asked for an update. WVSOM did not respond until November 20, 2012, advising Nicole of another "decision date", which also came and went without a decision.

127.     WVSOM also failed to take steps to protect Nicole from further harassment, such as the taking interim steps before the final outcome of the investigation.

**WVSOM's Ongoing Failure to Protect Nicole's Privacy, Disregard of Widespread Mockery of Her Sexual Assault, and Gross Indifference to Her Ongoing Victimization**

128.     WVSOM continued to fail to maintain her privacy regarding the sexual assault. Nicole was horrified to learn that numerous students and faculty were aware that Nicole had been raped and filed a complaint. Students frequently approached Nicole and asked her whether she was "that first year that was raped by McGuiness?"

129.     Even worse, the School permitted and actively cultivated widespread mockery by administrators, faculty and students about issues of sexual assault and Nicole.

130.      Several WVSOM staff members joked that Nicole "need[ed] a desk" in Dean Schriefer's office.

131.      On October 7, 2012, Wood, at whose apartment McGuinness had initially assaulted Nicole, further mocked Nicole's blackout and rape, posting on Facebook that he "woke up in a nice hotel in my underwear with no memory of how I got there…." Wood tagged McGuinness in the post.

132.      WVSOM similarly permitted Title IX itself to be jeered at and belittled. On November 15, 2012, while attending mandatory on-campus Title IX training, Assistant Professor Dr. Peter J. Ward, one of Nicole's professors, posted a comment on Facebook treating the training sessions as a farce or worse. He described the Title IX training as either boring or "soft-core porn."

133.      Students piled onto Dr. Ward's Facebook post, writing that the Title IX training taught them was that "drunk sex is good sex."

134.      WVSOM lacked policies and procedures in place to protect against such further harassment.

135.      When Nicole brought these incidents to the attention of WVSOM, WVSOM took no action.

136.      WVSOM's indifference and failures caused Nicole anxiety, panic attacks, and depression.

137.      In November 2012, Nicole, for the first time in her life, and with no history of depression or anxiety, began to see a local therapist, Dr. Lisa Ryan, who was also a professor at WVSOM.

138.    Dr. Ryan diagnosed Nicole with Post Traumatic Stress Disorder from the sexual assault and its aftermath, and prescribed anti-depressants.

## WVSOM'S Whitewashed "Report" and Continuation of the No Contact Order Against Both McGuinness and Nicole

139.    On December 10, 2012, over a hundred days after Nicole reported her rape, WVSOM issued a Confidential Report of Investigation (the "Report").

140.    WVSOM found McGuinness violated the School's Honor Code. "The behavior of the respondent was unprofessional on the night in question and will be referred to the Judicial Hearing Board for review and sanctions." The Report stated that McGuinness's conduct "negatively impacted fellow students" and included "consumption of an illegal drug which he brought to the party."

141.    The Report also determined that Nicole was in a blackout state prior to the assault and that Nicole's allegations of sexual harassment were made in good faith.

142.    However, the Report determined that McGuinness did not know that Nicole was incapacitated so sexual harassment had not been proved.

143.    Nicole and many others on campus were stunned.

144.    After reading the Report, Dean Schriefer told Nicole that it was incorrect and that she should "sue the school."

145.    The Report said nothing about Nicole's belief that McGuinness had drugged her. Having found that McGuinness had brought and was using illegal drugs that night, this omission is particularly glaring.

146.    WVSOM failed to collect critical evidence, such as proper drug testing of Nicole. When Nicole sought to collect such evidence herself, WVSOM refused to assist her.

147.   WVSOM failed to collect critical evidence from the Court hearings, including statements made by McGuinness under oath, claiming that the so-called "legal investigation" was separate. WVSOM ignored incriminating statements by McGuinness, demonstrating that he was well aware that Nicole was incapacitated, such that he knew that Nicole was drinking "way too fast". There was also evidence that McGuinness was well aware that he was under serious suspicion of drugging Nicole and attempted to manufacture evidence that he had not done so – McGuiness specifically asked a student to testify on his behalf that he had not put anything in her drink. The Report also ignored evidence that McGuinness sold drugs on campus.

148.   McGuinness' choice of location for the sexual assault was also ignored. With Nicole clearly incapacitated, McGuinness lured Nicole to a nearby lair, rather than seek to negotiate taking her a distance away to his own apartment.

149.   Additionally, throughout the Report, facts favorable to Nicole were downplayed or dismissed in favor of facts favorable to McGuinness. The Report –

- ignored McGuiness' admission that Nicole was drinking "way too fast" and other discrepancies in his
- ignored or downplayed several other instances of McGuinness' aggression towards women on campus.
- ignored a student's and Harvey's statements to Nicole that McGuiness had a reputation for being aggressive and Harvey's statement that he acted aggressive to a staff member only weeks prior to his rape of Nicole.
- ignored other witnesses who heard Wright breach Nicole's privacy, blindly accepting Wright's denial of doing so.
- ignored the Facebook posts and other evidence showing that, prior to the issuance of the Report, Nicole was ridiculed and judged, discouraging her and other witnesses from coming forward.

### WVSOM's Admission that the School was Unable to Protect Nicole and Ushering Her Out the Door

150. WVSOM's failure to protect Nicole continued after the completion of the Report. On December 14, 2012, WVSOM Class President, Slava Agafonoff, posted on Nicole's Facebook wall, "Did you enjoy that TBL today? Haha. That thing raped me."

151. WVSOM's ultimate response to this travesty on campus was to punish the victim. President Adelman told Nicole's father that WVSOM's "first priority is to get Nicole out of here, for her safety, comfort and well-being." In so doing, WVSOM blatantly and indisputably deprived Nicole of any and all educational opportunities at the School based on sex.

152. Dean Schriefer and President Adelman offered to do "anything they could to help" effectuate her removal from campus. They offered to contact deans at other medical schools on her behalf so that she could end her tenure at WVSOM as soon as feasible.

153. WVSOM's direction and facilitation of Nicole's leaving the School flatly contradicted Title IX's mandate to maintain student safety and provide equal educational opportunities. It also illegally placed the burden on the complainant, removing her from classes while allowing the alleged perpetrator to remain.

### McGuinness' Violation of the Protective Orders Against Him and WVSOM's Ongoing Failure of WVSOM to Keep Nicole Safe

154. On January 4, 2013, soon after McGuinness was given notice that Nicole had appealed the findings of the Report, he approached Nicole at a local pub where she was seated with friends.

155. McGuiness started talking to one of Nicole's friends, put his arm around the friend, who was standing close to Nicole, and blocked Nicole's ability to leave the pub without passing McGuiness.

156.    Nicole was shaken and frightened by McGuinness' close contact with her and intrusion into her personal space.

157.    The next evening, McGuinness did it again – he tracked her down at the pub, hugged one of her friends at the table where she was seated, and blocked her egress.

158.    Nicole felt upset and unsafe.

159.    On January 7, 2013, Nicole reported these incidents to Dean Schriefer who said that McGuinness' actions violated the Personal Safety Order and No Contact Order. He told her to report his conduct to law enforcement, which she did.

160.    On January 16, 2013, McGuiness was arrested and brought before a magistrate. The Court modified the previous restraining order increasing the restrictions that McGuinness was barred from being within 250 feet of Nicole.

161.    WVSOM, however, refused to take any action against McGuiness.

162.    Although Bicksler and Shawver offered to provide Nicole a personal escort from and to her classes, the escort was often unable to accompany Nicole, rendering the escort unworkable.

163.    WVSOM failed to check with Nicole to ensure that the provision of an escort was an effective procedure or take any other steps to keep her safe.

### WVSOM'S Flawed Appellate Decision and Refusal to Reopen the Case Despite Nicole's Submission of Proof of Being Drugged

164.    On appeal, as during the initial investigation, WVSOM failed to keep Nicole informed about the appeal's progress or outcome.

165.    To add insult to injury, Nicole was notified at 4:55 p.m. on Thursday, January 24, 2013 that the appeal board's decision was available for her to pick up. Since the office closed at 5:00 p.m., Nicole was unable to obtain the decision until the next day, Friday.

166.     Due to the stress and anxiety waiting overnight for the decision, Nicole was unable to study for her Friday exam and did poorly causing her to fail the course.

167.     WVSOM denied Nicole's appeal.

168.   On February 15, 2013, Nicole received the results of a drug test confirming that Nicole was in fact given diazepam (Valium)—a commonly used rape drug—during the relevant time period.

169.     Nicole submitted these results to WVSOM and urged WVSOM to reopen the case to include this vital evidence; WVSOM refused.

170.     In or about March of 2013, Nicole took a leave of absence from WVSOM.

171.     On or about July 12, 2013, Nicole withdrew from WVSOM. She transferred to another medical school and had to repeat her entire first year.

172.     McGuinness, however, remained at WVSOM.

173.     As "punishment", McGuiness had to write a 5-page paper about why drugs are harmful and do 10 hours of community service. He was told that so long as he was not caught engaging in similar behavior in the future, the incident would be excluded from his Dean's Letter of recommendation which would be needed to obtain a residency. In other words, the consequences for McGuinness were minimal.

174.     WVSOM refunded none of Nicole's tuition.

**WVSOM's Refusal to Cooperate with the Office of Civil Right's Investigation**

175.   Meanwhile, on March 12, 2013, Nicole filed a complaint with the United States Department of Education's Office of Civil Rights ("OCR") detailing WVSOM's inappropriate handling of her complaint and violation of her Title IX Rights.

176.    When Nicole asked for an update on the investigation, OCR employee Victoria Springs informed her that it was taking longer because WVSOM refused to cooperate.

177.    WVSOM refused to take Nicole's complaint seriously; it was not until the OCR started investigating the School that WVSOM began modifying their policies to comply with Title IX.

178.    WVSOM's mishandling of Nicole's sexual assault, indifference to her concerns, and failure to provide her with even limited protection constituted severe and pervasive harassment, limiting and denying Nicole's ability to participate in or benefit from the WVSOM's educational program based on sex.

179.    Throughout the process, WVSOM chilled Nicole from asserting her right to be free from sexual harassment and intimidated her from pursuing her rights under Title IX.

180.    As a result, Nicole experienced tremendous anxiety, fear, and psychological trauma.

## CLAIMS

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF TITLE IX**
**AGAINST DEFENDANT WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE**
**20 U.S.C. § 1681, *et seq.***
**(Hostile Educational Environment)**

181.    Plaintiff repeats and re-alleges all prior paragraphs.

182.    Plaintiff was subjected to physical sexual harassment, sexual assaults, sexual discrimination, and retaliation that were so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits.

183.   WVSOM created and/or subjected Nicole to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

       a.   Plaintiff was a member of a protected class;

       b.   she was subjected to sexual harassment in the form of sexual assault by another student;

       c.   she was subjected to harassment based on sex; and

       d.   she was subjected to a hostile educational environment created by WVSOM's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment and retaliation.

184.   WVSOM became a sexually hostile environment where her rapist roamed free and could turn up at any moment, her private information was openly shared with the campus community, and she became of the target of hostile and offensive jokes and comments mocking her rape by WVSOM students and employees that worsened the hostile environment that she was forced to endure.

185.   WVSOM and its officials had actual knowledge of the sexual assault and the resulting harassment and retaliation of Plaintiff and reacted with deliberate indifference, eventually forcing Plaintiff to leave campus and lose her educational opportunities at the University.

186.   Because of the ongoing sexually hostile environment that WVSOM deliberately failed to address, Plaintiff suffered losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: lost future earnings and loss of

earning capacity; damage to and delays in her pursuit of higher education; and fear, anxiety, trauma and emotional distress.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF TITLE IX
### AGAINST DEFENDANT WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE
### 20 U.S.C. § 1681, *et seq.*
### (Clearly Unreasonable Response)

187.    Plaintiff repeats and re-alleges all prior paragraphs.

188.    WVSOM had actual knowledge of Plaintiff's sexual harassment and discrimination.

189.    WVSOM's response to the harassment was clearly unreasonable in light of the known circumstances.

190.    The discrimination, consisting of McGuiness' rape of Plaintiff, the risks to Plaintiff's safety, the loss of her ability to continue at WVSOM, and the retaliation she endured, was so severe, pervasive, and objectively offensive that it barred Plaintiff's access to educational opportunities and benefits.

191.    Plaintiff was subjected to the discrimination because of WVSOM's deliberate indifference to known acts of harassment, sexual violence, discrimination, and retaliation.

192.    Had WVSOM not been deliberately indifferent to Plaintiff's harassment, discrimination, and retaliation, Plaintiff would be on campus progressing towards her WVSOM degree. Instead, Plaintiff was forced to leave campus while McGuiness remained, having suffered no consequences.

193.    Because of WVSOM's deliberate indifference, Plaintiff has suffered losses of educational opportunities and benefits, along with injuries, damages, and losses, including but

not limited to: emotional distress, fear, anxiety, and trauma; lost future earnings and earning capacity; and damage to and delays in her pursuit of higher education.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF SECTION 1983
### VIOLATION OF FIRST AMENDMENT FREE SPEECH RIGHTS
### AGAINST DEFENDANT SHAWVER IN HIS OFFICIAL AND INDIVIDUAL CAPACITY
### 42 U.S.C. § 1983

194.     Plaintiff repeats and re-alleges all prior paragraphs.

195.     Nicole's right to speak about her case with and seek support from her friends, family, WVSOM administrators and employees, and therapist was protected by the First Amendment of the United States Constitution.

196.     WVSOM attorney Shawver told Nicole that she was not allowed to speak with her psychologist or anyone at WVSOM, including the Title IX Coordinators, about the case because it would be in violation of the magistrate's gag order, later found to be non-existent, and could subject her to criminal charges.

197.     WVSOM official Shawver was a state actor acting under color of state law.

198.     Shawver violated Nicole's clearly established right to free speech by threatening her with criminal charges if she spoke about her case.

199.     Shawver acted intentionally and with callous disregard for Nicole's clearly established constitutional rights.

200.     As a direct and proximate result of Shawver's violations of Nicole's constitutional rights, Nicole was silenced during a very difficult time in her life and suffered severe and substantial damages, including loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by this Court.

28

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF SECTION 1983**
**VIOLATION OF FOURTEENTH AMENDMENT EQUAL PROTECTION RIGHTS**
**AGAINST DEFENDANTS ADELMAN, BICKSLER, AND SOPER IN THEIR OFFICIAL**
**AND INDIVIDUAL CAPACITY**
**42 U.S.C. § 1983**

201.     Plaintiff repeats and re-alleges all prior paragraphs.

202.     Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

203.     WVSOM officials Adelman, Bicksler, and Soper were all state actors acting under color of state law when they violated Nicole's clearly established rights under the Fourteenth Amendment.

204.     WVSOM officials Adelman, Bicksler, and Soper subjected Nicole to violations of her clearly established right to personal security and bodily integrity and Equal Protection of Laws by: failing to properly investigate McGuiness's misconduct; failing to appropriately discipline McGuiness; failing to adequately train and supervise its employees; and manifesting deliberate indifference to the sexual assault and ongoing harassment and retaliation of Nicole by other students and employees.

205.     WVSOM has and/or had unconstitutional customs or policies of a) failing to properly investigate evidence of criminal and tortious misconduct against a WVSOM student in the violation of her right to personal security and bodily integrity and b) failing to adequately train and supervise WVSOM employees about maintaining, preserving, and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

206.     The School District's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

207.     WVSOM employees Adelman, Bicksler, and Soper are or were at the time of events complained of within, policymakers for the purpose of implementing the School District's unconstitutional policies or customs.

208.     As a result, Nicole has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to her rights under the Fourteenth Amendment.

**FIFTH CLAIM FOR RELIEF**
***MONELL* LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE
PERSONNEL ON THE PROPER RESPONSE TO SEXUAL ASSAULT
AGAINST DEFENDANT WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE
42 U.S.C. § 1983**

209.     Plaintiff repeats and re-alleges all prior paragraphs.

210.     Defendants Adelman, Bicksler, and Soper were "state actors" working for WVSOM, a federally funded school system.

211.     Defendants Adelman, Bicksler, and Soper acted under "color of law" when refusing to properly respond to Plaintiff's sexual assault on school premises.

212.     Defendants Adelman, Bicksler, and Soper failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

213.     Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

214.   Defendants Adelman, Bicksler, and Soper should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated regulations.

215.    Defendants Adelman, Bicksler, and Soper each violated Plaintiff's right to equal access by:

        a.  Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

        b.  failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

        c.  failing to conduct an adequate, reliable and impartial investigation and resolve the complaint in a prompt and equitable manner;

        d.  failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

        e.  failing to provide designated and reasonably prompt timeframes;

        f.   failing to provide periodic updates;

        g.  failing to minimize the burden on the complainant; and

        h.  failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures.

216.    WVSOM violated Nicole's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated requirements.

217.    These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

218.    WVSOM's actions and lack of actions were the proximate cause of Plaintiff's emotional distress and psychological damage, and her character and standing in her community

31

have suffered from the harassment fostered as a result of WVSOM's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

### SIXTH CLAIM FOR RELIEF
### *MONELL* LIABILITY FOR UNCONSTITUTIONAL CUSTOM AND PRACTICES AGAINST DEFENDANT WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE
### 42 U.S.C. § 1983

219.     Plaintiff repeats and re-alleges all prior paragraphs.

220.     Defendants have a custom, policy, or procedures of discriminating against students on the basis of sex. This custom, policy, or procedure allows their employees and agents to violate the constitutional rights of students, like Nicole.

221.   In addition, Defendants have also been given notice on repeated occasions of a pattern of ongoing constitutional violations and practices by Defendants and the agents under their supervision. Said patterns and practices have resulted in the wrongful injury of Nicole.

222.   Despite notice, Defendants have demonstrated deliberate indifference to these patterns and practices of constitutional violations by failing to take necessary, appropriate, or adequate measures to prevent their continued perpetration. This lack of adequate response by Defendants demonstrates the existence of a custom or policy by Defendants that tolerates and promotes the continued violation of constitutional rights.

223.     By committing the acts complained of herein, Defendants, while acting under color of law, have demonstrated a deliberate indifference to clearly established law.

224.     Defendants caused a constitutional deprivation of Nicole's rights, namely the loss of Equal Protection under the law and a loss of Substantive Due Process under the law.

225.     In doing the acts complained of herein, Defendants violated Nicole's Fourteenth Amendment substantive due process right by arbitrarily depriving Nicole of protected interests.

226.    Defendants also violated Nicole's Fourteenth Amendment Substantive Due Process right by failing to train employees to handle and understand the needs of sexual assault victims.

227.    Defendants further violated Nicole's rights by failing to provide her with equal access to education opportunity as they did her peers.

228.    As a direct and proximate result of the unconstitutional policies and acts of Defendants, Plaintiff has sustained pain in suffering in violation of 42 U.S.C. § 1983.

## SEVENTH CLAIM FOR RELIEF
### *MONELL* LIABILITY FOR UNCONSTITUTIONAL CUSTOM AND PRACTICES AGAINST DEFENDANT WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE 42 U.S.C. § 1983

229.    Plaintiff repeats and re-alleges all prior paragraphs.

230.    Defendants have a custom, policy, or procedures of discriminating against students on the basis of sex. This custom, policy, or procedure allows their employees and agents to violate the constitutional rights of students, like Nicole.

231.   In addition, Defendants have also been given notice on repeated occasions of a pattern of ongoing constitutional violations and practices by Defendants and the agents under their supervision. Said patterns and practices have resulted in the wrongful injury of Nicole.

232.   Despite notice, Defendants have demonstrated deliberate indifference to these patterns and practices of constitutional violations by failing to take necessary, appropriate, or adequate measures to prevent their continued perpetration. This lack of adequate response by Defendants demonstrates the existence of a custom or policy by Defendants that tolerates and promotes the continued violation of constitutional rights.

233.    By committing the acts complained of herein, Defendants, while acting under color of law, have demonstrated a deliberate indifference to clearly established law.

33

234.     Defendants caused a constitutional deprivation of Nicole's rights, namely the loss of Equal Protection under the law and a loss of Substantive Due Process under the law.

235.     In doing the acts complained of herein, Defendants violated Nicole's Fourteenth Amendment substantive due process right by arbitrarily depriving Nicole of protected interests.

236.     Defendants also violated Nicole's Fourteenth Amendment Substantive Due Process right by failing to train employees to handle and understand the needs of sexual assault victims.

237.     Defendants further violated Nicole's rights by failing to provide her with equal access to education opportunity as they did her peers.

238.     As a direct and proximate result of the unconstitutional policies and acts of Defendants, Plaintiff has sustained pain in suffering in violation of 42 U.S.C. § 1983.

**EIGHTH CLAIM FOR RELIEF**
**INVASION OF PRIVACY**
**AGAINST DEFENDANTS WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE AND WRIGHT**

239.     Plaintiff repeats and re-alleges all prior paragraphs.

240.     WVSOM employee Tiffany Wright gave unreasonable publicity to Nicole's private life and placed her in a false light before the public when she revealed facts regarding the investigation of Nicole's sexual assault to members of WVSOM's student body without Nicole's permission.

241.     The facts Tiffany Wright disclosed regarding Nicole were private and of a highly sensitive nature.

242.     The disclosure by Tiffany Wright was highly offensive and objectionable to a reasonable person of reasonable sensibilities.

243.     The public has no legitimate interest in the facts disclosed.

244.     Tiffany Wright's disclosure resulted in widespread publicity of WVSOM's investigation of Nicole's sexual assault and caused Nicole to be confronted and harassed by her peers on campus regarding the investigation.

245.     This disclosure caused Nicole to suffer severe emotional distress and psychological damage, and her character and standing in the community have suffered from her invasion of privacy.

## NINTH CLAIM FOR RELIEF
### *PRIMIA FACIE* NEGLIGENCE
### AGAINST DEFENDANT WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE

246.     Plaintiff repeats and re-alleges all prior paragraphs.

247.     Under Title IX, WVSOM owed a legal duty to properly investigate and resolve Nicole's report of sexual assault.

248.     Additionally, under Title IX, WVSOM owed a legal duty to take steps reasonably calculated to end the harassment, eliminate its effects, prevent the harassment from recurring, and prevent and address any retaliation.

249.     Nicole is within the class of persons for whose protection Title IX was adopted.

250.     WVSOM's breach of its legal duty to Nicole proximately caused Nicole to suffer from severe emotional distress and psychological damage, and her character and standing in the community have suffered.

251.     The breach constituted *prima facie* negligence.

## TENTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
### AGAINST DEFENDANT WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE

252.     Plaintiff repeats and re-alleges all prior paragraphs.

253.     In their sexual harassment policy, WVSOM guaranteed their commitment to "creating and maintaining a working environment for all students, school personnel, and applicants for employment that is free of objectionable and disrespectful conduct of a sexual nature."

254.     Additionally, in their sexual harassment policy, WVSOM prohibited "sexual harassment by all faculty, staff, and students" and stated that it is committed to conducting an "appropriate investigation" of all sexual harassment claims.

255.     Further, WVSOM's sexual harassment policy required that the complainant "be informed, on an ongoing basis, of the status of the investigation."

256.     Lastly, WVSOM's policy promised that "any supervisor, agent, employee, or student who is found, after appropriate investigation, to have engaged in sexual harassment of another employee or student will be subject to appropriate disciplinary action (…)."

257.     Nicole foreseeably and reasonably relied on these assertions when accepting admission to and attending WVSOM.

258.     WVSOM breached its agreement with Nicole when it failed to appropriately investigate and resolve her report of sexual assault, maintained an environment where Nicole was sexual assaulted, harassed, and retaliated against, failed to keep Nicole informed, on an ongoing basis of the status of the investigation, and subject the perpetrator to appropriate disciplinary action.

259.     Due to WVSOM's breach of contract, Nicole suffered serious emotional distress and psychological damages and her character and standing in her community has suffered greatly.

36

## ELEVENTH CLAIM FOR RELIEF
## UNAUTHORIZED PRACTICE OF LAW
## AGAINST DEFENDANT WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE
## AND PRESIDENT ADELMAN

260.     Plaintiff repeats and re-alleges all prior paragraphs.

261.     WVSOM employee President Adelman provided legal advice and counsel to Nicole when he informed her that he was an attorney and advised her that she did not need an attorney to accompany her to the magistrates hearing and appointed Dean Schriefer to attend the hearing to support her.

262.     Nicole relied on President Adelman's legal experience, advice, and counsel and decided against obtaining legal assistance.

263.     Due to President Adelman's assertions, Nicole's legal rights were not protected at the hearing and she was without legal assistance or support.

264.     Upon information and belief, President Adelman is not authorized to practice law within West Virginia.

265.     The unlawful and unauthorized practice of law by President Adelman was the actual and proximate cause of injury to Nicole's personal legal rights and interests.

## TWELTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST DEFENDANT WEST VIRGINIA SCHOOL OF OESTOPATHIC MEDICINE

266.     Plaintiff repeats and re-alleges all prior paragraphs.

267.     WVSOM and its employee's actions were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

268.     WVSOM and its employees acted recklessly when it was certain or substantially certain emotional distress would result from the conduct.

269.     The actions by WVSOM and its employees caused Nicole to suffer emotional distress so severe that no reasonable person could be expected to endure it.

270.     Due to WVSOM's intentional infliction of emotional distress, Nicole suffered serious emotional distress and psychological damages.

**THIRTEENTH CLAIM FOR RELIEF**
**RETALIATION IN VIOLATION OF TITLE IX**

271.     Plaintiff repeats and re-alleges all prior paragraphs.

272.     Title IX prohibits exclusion from participation in, denial of benefits of, or being subjected to discrimination under any educational institution program or activity receiving federal financial assistance.

273.     Plaintiff engaged in activities protected by Title IX, including but not limited to, her initial complaint to WVSOM regarding sexual abuse and subsequent reports to WVSOM regarding sexual discrimination, harassment, and retaliation by WVSOM and its staff, faculty, and students.

274.     WVSOM deliberately and intentionally subjected Plaintiff to retaliation because she engaged in activities protected by Title IX.

275.     WVSOM and its staff, faculty, and students' ongoing retaliation and refusal to take action to end retaliation against Plaintiff were in violation of Title IX.

276.     Plaintiff repeatedly complained about the retaliation to WVSOM officials and agents who responded with deliberate indifference, unreasonable responses, and by further retaliation against Plaintiff.

277.     As a direct and proximate result of WVSOM's unlawful acts, Plaintiff suffered losses of educational opportunities and benefits, along with injuries, damages, harms, and losses, including, but not limited to: lost future earnings and loss of earning capacity; damage to and

38

delays in her pursuit of higher education; and fear, anxiety, humiliation, trauma and emotional distress.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

a. Compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, humiliation, loss of enjoyment, impairment of relationships, damage to her career and pecuniary losses including out of pocket expenses caused by Defendants' conduct and incurred in response to these circumstances;

b. Punitive damages;

c. Injunctive relief requiring WVSOM to change its drug policy and provide advanced drug testing for victims of sexual violence that is capable of identifying a single exposure to drugs; update its policy to include that any drugs identified which are not relevant to the case will not be used against a victim; and agree not to retaliate against any employee or student who supports a complainant of sexual harassment;

d. Statutory interest;

e. Costs;

f. Reasonable attorney fees; and

g. And whatsoever additional relief this court finds just and reasonable.

## **JURY DEMAND**

Now comes Plaintiff, Nicole Rex, by and through her attorneys, Marsh Law Firm and the Law Office of Rachel Hanna, and demands a trial by jury.

Dated: November 4, 2015.

Respectfully Submitted,


_____
By Counsel

MARSH LAW FIRM PLLC
s/ James R. Marsh
s/ Jennifer Freeman

James R. Marsh (*pro hac vice pending*)
New York Registration Number 250763

Jennifer Freeman (*pro hac vice pending)*
New York Registration Number 1677004

The Marsh Law Firm PLLC
P.O. Box 4668 #65135
New York, NY 10163-4668
Telephone Fax: (212) 372-3030
jamesmarsh@marshlaw.us
jenniferfreeman@marshlaw.us


_____
Rachel Hanna (WV Bar # 9767)

Law Office of Rachel Hanna
P.O. Box 871
117 East Washington Street
Lewisburg, WV 24901
Telephone: 304-792-4529
rachelhanna@rachelhanna.com